MEM.—WHITMAN C. J. did not attend at this term, and took no part in the decisions.

### JESSE AIKEN *versus* WILLIAM KILBURNE.

In the trial of an action, brought by a creditor (under Rev. Stat. c. 148, § 49,) against a person, for aiding a debtor in the fraudulent concealment or transfer of his property, to defraud his creditors, the debtor is a competent witness for the plaintiff, so far as it respects his interest in the event of the suit.

Nor is the debtor incompetent to testify, in such case, because he had given an entirely different account of the transaction between himself and the defendant, under oath, in his petition to be declared a bankrupt; nor because he appeared to have been the principal actor in the fraudulent transfer of his property.

In such action the testimony of the debtor is competent evidence, to prove, that a promissory note or account produced, and purporting to be due from him, was in fact due.

Whether the communications of a client, to his attorney, shall, or shall not be regarded as matters of professional confidence, and therefore be excluded from being given in evidence, does not depend upon their importance or materiality in the prosecution or defence of the suit, but on the character of the communications.

Communications made by a client to his legal adviser, for the purpose of obtaining professional aid or advice, are not excluded on account of a privilege, which an attorney may waive, because it is a personal one, but on account of a privilege, attached to the communication, for the better ad-

ministration of justice, and which can only be separated from it, by the consent of the client.

It is not necessary, that the creditor should first have obtained judgment against his debtor, in order to maintain an action on the forty-ninth section of c. 148, of the Revised Statutes.

The statute does not require, that it should be made to appear, that the person, who knowingly aids a debtor in the fraudulent concealment or transfer of his property, should derive a benefit therefrom to make him liable to the action of the creditor.

While a mortgage of real estate, before foreclosure, may be regarded as a pledge, security for the payment of money, or chose in action, passing to the executor, and not to the heir, it is still a conditional conveyance of an estate, and the rules of law respecting fraudulent conveyances are applicable to it.

EXCEPTIONS from the district court, REDINGTON J. presiding. A copy follows: —

"This is an action of the case, upon the 49 sect. of 148 chap. of Revised Statutes, against the defendant for knowingly aiding one John Ball, a debtor of the plaintiff, in a fraudulent transfer of his property. The plaintiff alleges that the defendant received of Ball, five promissory notes, made by said Ball, to plaintiff, of one hundred dollars each, and also a mortgage of a lot of land, owned by said Ball, for the security of said notes. And that there was no consideration for said notes and mortgage. The writ may be referred to. It was proved that notes and a mortgage, corresponding with those described in the writ, were given by Ball to the defendant, dated 16th April, 1842. It also appeared, that Ball, on the 10th Dec. 1842, presented to the District Court of the United States, his petition, to be allowed the benefit of the bankrupt law, and was, on the 4th Sept. 1843, decreed to be a bankrupt, but he has never obtained a discharge. In his schedule A, a part of his said petition, he inserted among the debts due from him, five notes to Wm. Kilburne, $515, secured by mortgage. In schedule B. (of his assets,) he inserted the farm, "subject to mortgage, which I gave to Wm. Kilburne, to secure $550, and interest." These schedules had been sworn to. The plaintiff offered Ball as a witness. The defendant objected to his admission, because of his interest in the event of the suit; be-

cause of said bankruptcy, oath, and bankruptcy proceedings; and because by plaintiff's own showing, Ball was the principal in the transaction alleged to be fraudulent, or at least, was an accomplice in it. Ball was nevertheless admitted, and testified to the fraudulent proceedings, between himself and defendant. Ball's indebtedness to plaintiff appeared to be upon two promissory notes, and an account of $9,46. Ball was asked by the plaintiff, whether he owed plaintiff those notes and the account; defendant objected, that Ball could not be competent to prove that indebtedness. The objection was overruled, and Ball testified to said indebtedness. Defendant objected that actions upon said 49th sect. could be maintained only in cases where the plaintiff was a judgment creditor, and in cases where the debtor transferred for the purpose of taking the poor debtor's oath. This objection was also overruled. The defendant offered the deposition of John E. Stacy, Esq., a counselor at law, a part of which plaintiff objected to, as having been given in violation of professional confidence. The objection was sustained and that part only of said deposition was permitted to be read, which is below pencil mark.

" The transfer alleged to be fraudulent, though dated 16th was in fact made on the 19th of April, 1842, subsequent to an attachment made on the same 19th of April, by Oliver Otis, upon the same land. Ball was defaulted in said action, and Otis' administrator took judgment at the June Term of the Supreme Judicial Court, 1846, for $322,50 damages, and $77,99 costs, upon the execution issued on said judgment. The whole of the land mortgaged, as aforesaid to defendant, was appraised at $423,27, and set off to said administrator, on the 6th July, 1846. The Judge was requested by the defendant to rule, that the said proceedings in said Otis' action, and upon said execution, were a bar to this action; but the ruling was, that said proceedings did not constitute a bar to this action. The documentary evidence relating to said judgment and levy, as also the deposition of said Stacy, and the proceedings in bankruptcy and the said mortgage deed, may be referred to, without copying. The verdict of the jury, and their written answers

to certain questions, are to be copied as a part of this case. To the foregoing rulings and overrulings, decisions and opinions of the Judge, the defendant hereby excepts.

"By H. Belcher, and R. Goodenow, att'ys for defendant."

"The foregoing exceptions having been reduced to writing, and presented for allowance, and on examination found to be correct, are hereby allowed, prior to the adjournment of the court."                "Asa Redington, Presiding Judge."

A copy of the verdict, and of the questions put to the jury, and of their answers, follows: —

"The jury find that the defendant is guilty in manner and form as the plaintiff has alleged.

"The jury find that the single amount of the debt due to the plaintiff at the time of the fraudulent transfer, was fifty-seven dollars and eighty-two cents.

"That the single value of the property fraudulently transferred, was one hundred dollars.

"They therefore assess damages for the plaintiff against the defendant at the sum of one hundred fifteen dollars and sixty-four cents.                "John Rowell, Foreman."

In the action, *Jesse Aiken* v. *William Kilburne.*

*Questions to be answered by the Jury.*

"1. Did Kilburne knowingly aid John Ball, in a fraudulent transfer of his property to secure the same from creditors or to prevent the seizure of the same by attachment or levy on execution?

"*Answer.* The jury agree that he did aid and assist John Ball, in fraudulent transfer of his farm.

"2. If so, what was the value of the property, thus fraudulently transferred? What was the amount of the personal property so transferred, if any? And what was the value of the one third part of the real estate so transferred?

"*Answer.* As to personal property the jury agree, that there was not any. As to the farm they agree, that it is worth $300, or ⅓ $100.

"3. What was the amount of Ball's indebtedness to Aiken, at the time of the fraudulent transfer?

"*Answer.* $57,82.                "John Rowell, Foreman."

"The jury further find, that Otis' attachment was prior to the making and delivering of the deed.

"John Rowell, Foreman."

"If the jury should find a verdict against the defendant, Kilburne, they will also find on what day the mortgage to Kilburne, was made, whether on the 16th or on the 19th of April, 1842. It is dated the 16th, but Ball testifies it was made on the 19th; which was the true day?

"*Answer.* The jury agree that it was made on the 19th.

"John Rowell, Foreman."

*H. Belcher* and *R. Goodenow* argued for the defendant, contending: —

1. Ball was improperly admitted as a witness for the plaintiff. He was incompetent for several reasons.

He was incompetent on account of his interest in the event of the suit. [The Court here informed the counsel, that this point had already been decided against the position taken, in a case in the county of Lincoln; and the counsel declined proceeding further on this ground.]

He was incompetent to testify, because he had given an entirely contrary account of the transaction, under oath, in the bankruptcy proceedings. He is as improper a person to be admitted to give testimony, as if he had been convicted of perjury.

He was incompetent to testify, because he was from his own showing, the principal, in the transaction alleged to be fraudulent. They argued, that the motives of policy which admitted a *particeps criminis* to testify in a criminal process did not apply in a civil action, and cited 1 Greenl. Ev. § 380.

Ball was improperly permitted to testify, that he owed a debt to the plaintiff. The introduction of the note, and the plaintiff's book and oath, would have been better evidence.

This action can be maintained only by a judgment creditor, and where the transfer was made by the debtor for the purpose of taking the poor debtor's oath. They examined the statute, and insisted that such was the true construction.

Stacy's deposition ought not to have been in any part reject-

ed. There would have been no violation of professional confidence, had the whole deposition been admitted. *Foster* v. *Hall,* 12 Pick. 98. What Ball said to Mr. Stacy, related entirely to the suit of *Otis* v. *Ball,* and where neither the plaintiff nor the defendant had any concern.

The District Judge erred in refusing to instruct the jury, " that the said proceedings in said Otis' action and upon said execution were a bar to this action," as requested by the counsel for the defendant. The attachment of the land prior to the conveyance to the defendant, and the levy of the execution thereupon, prevented the plaintiff from deriving any title to the land by that conveyance, or receiving any benefit whatever thereby. It did not and could not defraud creditors of Ball. It proved to be a mere void act, and no more defrauded the creditors of Ball, than if he had made a deed of land to which he had never a shadow of title. The value of the property fraudulently concealed is to be ascertained ; and how can this be done where none was conveyed ? No property was in fact concealed by this deed and these notes. The statute does not punish a man for an unsuccessful attempt to conceal property of a debtor.

The jury have found, that Ball made no fraudulent transfer of any personal property to the defendant. There was no transfer of real property. The only transfer of any thing, attempted to be made from Ball to the defendant, was by making a mortgage of the land ; and this was personal property until foreclosure. It would go to the executor and not to the heirs. Before foreclosure, it is " a pledge" — " a chose in action" — " an accident." *Smith* v. *People's Bank,* 24 Maine R. 194. The interest which the defendant could have by the mortgage to him is at best but contingent, liable at any moment to be defeated by payment of the notes. No value could be fixed or estimated. The making of a mortgage deed by a debtor is not a *transfer of property* in the sense intended by the section of the statute upon which this action is brought.

*May* and *Sherburne* argued for the plaintiff.

Of the five questions presented by the bill of exceptions in

this case, the first is the most important for us, because if that is decided against us, we have no expectation that we can succeed in another trial.

The first question relates to the competency of John Ball as a witness. The defendant objects to the admission of his testimony on three grounds : —

1. Because of his interest in the event of the suit.

2. Because of his oath and proceedings in bankruptcy.

3. Because he was the principal, or at least an accomplice, in the fraudulent transaction.

Are any of these objections valid ? — We contend not.

The first and principal objection to the competency of the witness, interest, has, it seems, already been decided in our favor.

As to the second ground of objection against the admission of Ball as a witness, we cite the case of *Burgess* v. *Bosworth,* 23 Maine R. 573, which is a case where the witness, being a party, had made oath directly the contrary of what she then stated, and the Court held her competent, and decided that such fact should be allowed only to affect her credibility.

As to the third objection to the competency of Ball, which is, that he is *particeps fraudis,* we cite *Moore* v. *Tracy,* 7 Wend. 229; *People* v. *Whipple,* 9 Cow. 707.

Public policy requires his admission, especially in a case like this; otherwise the statute will be to a great extent a dead letter.

2. But in the second place, the defendant, in his exceptions objects, that if Ball be a competent witness in the case, still, it was not competent to prove the fact of his indebtedness to the plaintiff by him.

We are unable to see any force in this objection, or to bring our minds to believe that our client is in danger of losing his verdict upon any such ground.

3. The third exception is, that the plaintiff was not a judgment creditor, and Ball did not transfer the property for the purpose of taking the poor debtor's oath, and the Judge refus-

ed to instruct the jury, or to rule that these things were necessary to the maintenance of the suit.

It is a sufficient answer to this objection, to refer to the stat. ch. 148, § 49.

The person who violates that section of the statute, is made answerable " to *any* creditor" who may sue, and it is a violation of that statute for any person to aid or assist " *any* debtor" in any fraudulent transfer of *his* proper property to secure the same from creditors, *or* to prevent the seizure of the same *by attachment* or levy on execution. Not one word about a judgment creditor, or the poor debtor's oath, in the whole section. And if the defendant wishes to interpolate that phraseology, he should apply to the Legislature rather than to this Court. *Quimby* v. *Carter*, 20 Maine R. 218.

4. The fourth exception relates to the rejection of a part of the deposition of Mr. Stacy, as having been given in violation of professional confidence.

That it was rightly rejected, the case of *Foster* v. *Hall*, 12 Pick. 89, a leading and full case upon the subject, is cited.

Whatever was rejected comes within the principle of that case, or was immaterial to the issue before the Court.

The rejection of a deposition, even if improperly rejected, will furnish no cause for granting a new trial, if the party offering it is not injured by its rejection. *Comstock* v. *Smith & al.* 23 Maine R. 202.

5. The fifth and last ground of exception is, that the Judge refused to rule, that the proceedings in the action of Oliver Otis, and upon the execution recovered in that case, were a bar to this action.

The facts show, that the property concealed or transferred was, upon the same day of its transfer, attached as the property of Ball, and afterward, on the 16th of July last, long after the date of the writ in this action, set off on execution to satisfy the demand on which it was attached.

Property fraudulently concealed or conveyed is always liable to be taken for the payment of existing debts ; and the statute does not contemplate that the purchaser shall acquire an inde-

feasible title before he can be charged. The absolute success of the fraud is not essential to the maintenance of a suit like this. "Any person who shall knowingly aid or assist any debtor in the fraudulent *concealment* or transfer of his property, to secure the same from creditors," is made liable by the statute. It is not therefore necessary, that he should acquire any interest in the property concealed or transferred; nor need the transfer or conveyance be to the defendant in the suit. If any person knowingly aid or assist in such a transfer, even though to another, the liability of the statute will attach. The fact then, that the defendant failed to secure the property to himself cannot be held a good bar to this suit. The fact too that it was under attachment at the time of the transfer, if it were so, can make no difference in the case. The transfer being fraudulent, as the jury have found, the administrator of Otis had a perfect right, independent of the attachment, to levy on the land. The attachment, so far as it regards the claim of Otis, was only necessary to secure him against the seizure of other creditors, who might attach. It was therefore to the defendant no incumbrance upon the land additional to that which the fraud of the defendant in the very act of transfer had imposed. He has lost nothing by the attachment but only by his fraud.

But if that attachment were an incumbrance, he has his remedy upon the covenants in his deed, and even if he should fail to be charged in this action, he will recover upon those covenants all which it is necessary for him to pay to extinguish such incumbrance upon the land. Thus he will hold the property conveyed, make Ball extinguish every incumbrance which was upon it, and at the same time, notwithstanding the fraud, set the wholesome provisions of the statute at defiance. The attachment and proceedings of Otis should not therefore be held as a bar to this suit.

Again, at the time of the transfer, Otis' debt was only $250 or $260, and the land was estimated by the parties, as appears by the consideration of the deed, at $500, and under his deed the defendant takes possession, and the profits of the land

until July last. Then did he not acquire *some* property from Ball by virtue of the deed, and was not this property Ball's property within the meaning of the statute? Was not the right of taking the profits, of paying off Otis' debt and of holding the land of *some value;* and were not all these fraudulently transferred? If so, then the attachment and levy of Otis, though they might possibly lessen the damages, would be no bar to the suit.

Again, in an action like this, we contend, that the defendant is estopped by his deed from denying that the property described in the deed, was transferred.

The opinion of the Court was by

SHEPLEY J. — It has been decided in the recent case of *Philbrook* v. *Handly, ante* p. 53, that the debtor is a competent witness, so far as it respects his interest in the event of the suit, for the creditor, in a case like the present.

It is further insisted in this case, that the debtor, Ball, was incompetent, because he had given an entirely different account of the transaction between himself and the defendant, in his petition to be declared a bankrupt, under the sanction of an oath. In the course of judicial investigations, witnesses are found to testify differently, on different occasions and at different times. Sometimes because they have ascertained, that they had made a mistake in their former testimony. At other times they exhibit a disposition to suit their testimony to the exigencies of the case. And on other occasions they acknowledge, that they were induced to testify falsely at a former time. In no such case can the question of the competency of the witness to testify properly arise, for it cannot be judicially known, how far his testimony may conform to, or differ from his former testimony. If it could be known, so that the objection to his competency could be presented, it must be overruled, for it is the peculiar province of the jury in an action at law, to decide, whether the testimony of a witness should be entitled to any, and if so, to what credit under the circumstances,

in which it is presented to them. *Burgess* v. *Bosworth,* 23 Maine R. 573.

Nor can the objection to his competency on the ground, that he appeared to be the principal actor in the fraudulent transfer of his property, prevail. A *particeps criminis* is a competent witness in a prosecution for the crime, and a *particeps fraudis* in a civil action to recover for the injury occasioned by it. *Bean* v. *Bean,* 12 Mass. R. 20.

The next objection is, that Ball was permitted to testify, that two promissory notes and an account produced, were due from him to the plaintiff. The books of the plaintiff accompanied by his testimony respecting the original entries, would, it is said, have been better evidence to prove the account. But the testimony of one who is a party to, and solely interested in the event of the suit, corroborated by entries in his book, cannot be regarded as better evidence, than the testimony of one who must, in that particular testify *directly* against his own interest. If the witness be worthy of confidence, to be reposed in his veracity, there can be no more certain or better evidence, that a promissory note, or an account produced and purporting to be due from him, is in fact due.

Exception is taken to the exclusion of a part of the deposition of John E. Stacy, on the ground that the statements made by Ball to him, were privileged communications made by a client to his attorney. Mr. Stacy testifies, that they were made in a conversation between him and Ball respecting a suit, in which he had been previously retained, then pending in Court, in the name of Otis against Ball. Some portions of that conversation do not appear to have been material, or necessary to the defence presented in that suit. But whether they must be regarded as matters of professional confidence, and therefore privileged communications, does not depend upon their importance or materiality in the defence of that suit. If it did, the confidence so essential between client and attorney, would be greatly impaired, if not destroyed. For the client cannot be expected to be fully informed how far many matters communicated may be important or material. Nor can he

reasonably be expected to decide and to be governed by such considerations in making his disclosures, his object being, to communicate every thing in any way appertaining to the transaction, that his attorney may be liable to no surprise. The character in which those communications were made and received, and not their relevancy or materiality to the defence of that suit, must therefore decide, whether they should be regarded as privileged or not. Lord Brougham, in the case of *Greenough* v. *Gaskell*, 1 Mylne and Keene, 98, examines many of the decided cases, and comes to the conclusion, " that matters committed to attorneys, solicitors, and counsel, in their professional capacity, and which but for their employment as professional men, they would not have come to be possessed of, " are not to be disclosed by them. Mr. Greenleaf in his treatise upon evidence, $ 240, states the result of an examination to be, that " this protection extends to every communication, which the client makes to his legal adviser for the purpose of professional advice or aid upon the subject of his rights and liabilities." In a conversation somewhat desultory, as in this case, between client and attorney, it may not always be easy to determine the purpose, for which certain communications were made. When, however, they appear to have been made, while the parties were manifestly speaking and listening in that character, it is reasonable to conclude, that they were made for the ostensible purpose ; and it would tend to impair the necessary confidence, if a different inference were drawn. The remarks of Ball, as related in the deposition of Stacy and excluded, appear to have been made in the character of a client speaking to his attorney as such ; and according to the rules before stated, they were properly excluded. Such communications are not excluded on account of a privilege, which an attorney may waive because it is a personal one, but on account of a privilege attached to the communication for the better administration of justice, and which can only be separated from it, by the consent of the client.

It is further contended, that a judgment creditor only can maintain an action on the forty-ninth section of the statute, c.

148. Such a construction cannot be admitted; the language will not authorize it. It makes one liable for aiding "any debtor," not a judgment debtor only, in the fraudulent concealment or transfer of his property "to secure the same from creditors" without distinction of class; and to prevent the seizure of the same by attachment or levy on execution. The word attachment, on such a construction, would be inoperative in all those cases, in which the suit was not commenced upon a judgment already recovered. And the provision would be useless, when any other than a judgment creditor had been prevented from obtaining payment by reason of the assistance afforded to his debtor in making a fraudulent transfer of his property. There is no indication of such an intention in the enactment of that provision of the statute.

Another exception is taken to the refusal of the District Judge to instruct as requested upon the facts proved. It appeared in testimony, that Ball, without any consideration therefor, made five promissory notes of one hundred dollars each, payable to the defendant, and conveyed to him certain lands to secure the payment of them. The notes and mortgage were dated April 16, 1842, but were in fact made on the nineteenth day of the same month and subsequent to an attachment, made on that day, of the same premises on a writ in favor of Oliver Otis against Ball. Otis having deceased, the administrator on his estate recovered judgment in that suit, and on July 6, 1846, caused a levy to be made upon the premises conveyed in mortgage to the defendant. The presiding Judge was requested to instruct the jury, that such proceedings would be a bar to this action. This he refused to do. It is now contended, that no fraudulent concealment or transfer of the property of Ball, was exhibited in the proof of that transaction between him and the defendant; because the levy deprived Ball of all title to the mortgaged premises from the date of the attachment. The title to an estate attached remains in the owner subsequent to the attachment, and he may legally convey it subject to be defeated, should the plaintiff in such suit recover judgment and pursue such a course as would

give him a superior title. A debtor may therefore transfer an estate under attachment to secure it from further attachment or from seizure on execution ; and one who knowingly aids him to do it violates the provisions of the statute. It is also said that the jury cannot ascertain, as they must do, the value of an estate transferred, when it appears to have been taken from the debtor, or his grantee, by virtue of a prior attachment. Our statute not only contemplates, that an estate may be of value while subject to an existing attachment, but that it may be also, after a levy has already been made upon it according to an appraised value. c. 94, § 43.

At the time of the trial the defendant appears, by his conveyance in mortgage, not only to have held the right to redeem the premises from the levy made by the administrator of Otis, but to have been entitled to call upon Ball, for a breach of the covenants of that deed.

The statute, however, does not require, that it should be made to appear, that the person who knowingly aids a debtor in the fraudulent concealment or transfer of his property, should derive a benefit therefrom to make him liable to the action of the creditor. All fraudulent transfers being void *as against* creditors, the person taking such a conveyance may be deprived of the property, so conveyed, by one creditor, after he has been compelled to pay the value of it to another creditor of the same debtor, whom he has knowingly aided in the transfer of it. He is made liable, not because he has received property from the debtor by a fraudulent transfer, but because he has knowingly aided a debtor in the commission of fraud with a design to injure his creditors. One, who thus aids a debtor to make a transfer to a third person, comes as fully within the provisions of the statute, as he would do, if such transfer had been made to himself. And one, who knowingly assists the debtor in the fraudulent concealment of his property, to prevent its being attached or seized on execution, is liable to the action of a creditor, although the debtor may never have parted with the legal title to the property.

The jury found, in answer to certain questions submitted to

them, that no personal property was transferred; and that finding, it is insisted, must include the mortgage made by Ball to the defendant, so that no judgment can consistently be entered against him. It might be a sufficient answer to this objection to say, that no such question is presented by this bill of exceptions. The jury have found a fraudulent transfer of property by that conveyance in mortgage, and whether they correctly designated the kind of property may not be very material. While a mortgage of real estate may before foreclosure be regarded as a pledge, security for the payment of money, or chose in action passing to the executor and not to the heir, it is still a conditional conveyance of an estate; and the rules of law respecting fraudulent conveyances are applicable to it.                                     *Exceptions overruled.*